**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

TERRY DORSEY,

     Plaintiff,

     v.

LARRY HOGAN,
ROBERT L. GREEN,
FRANK BISHOP,
GREG WERNER,
RICHARD RODERICK,
D. THOMAS,
WILLIAM BEEMAN,
BRENDA REESE,
RONALD WEBER,
ROBIN WOOLFORD,
WAYNE HILL,
CORIZON HEALTH SERVICES,
MARYLAND DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL
SERVICES,
DR. GETACHEW,
DR. ROSS CUSHING and
KEITH ARNOLD,

     Defendants.

Civil Action No. TDC-21-0721

**MEMORANDUM OPINION**

Self-represented Plaintiff Terry Dorsey, a state inmate currently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 against Maryland Governor Larry Hogan, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Secretary of the DPSCS Robert L. Green, North Branch Correctional Institution ("NBCI") Warden Frank Bishop, NBCI Chief of Security Greg Werner, NBCI Case Management Supervisor Richard Roderick, NBCI Americans with

Disabilities Act Coordinator D. Thomas, WCI Warden Ronald Weber, WCI Chief of Security Keith Arnold, DPSCS Deputy Director Robin Woolford, and Commissioner of Correction Wayne Hill (collectively, the "Correctional Defendants"); Corizon Health Services ("Corizon"), William Beeman, Brenda Reese, and Dr. Asresahegn Getachew (collectively, the "Medical Defendants"); and Dr. Ross Cushing. In the Complaint, Dorsey asserts that he is hearing impaired and that Defendants have denied him access to accommodations, programs, and services mandated by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (2018); the Rehabilitation Act, 29 U.S.C. §§ 701–796 (2018); and pursuant to the settlement agreement in *Jarboe v. Maryland Department of Public Safety and Correctional Services*, No. ELH-12-572 (D. Md. 2015). He also alleges that Defendants have been deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. He seeks a declaratory judgment, injunctive relief, and monetary damages.

The Correctional Defendants and the Medical Defendants have filed separate Motions to Dismiss, or in the Alternative, for Summary Judgment, both of which are fully briefed. Also pending is Dorsey's second Motion for Appointment of Counsel. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Correctional Defendants' Motion will be GRANTED IN PART and DENIED IN PART, and the Medical Defendants' Motion will be GRANTED IN PART and DENIED IN PART. As Dr. Cushing was not served, counsel for the Medical Defendants will be ordered to provide his last known home or business address so that service may be effected.

## BACKGROUND

In his Complaint, Dorsey alleges that in 1996, he was diagnosed with deafness in his left ear. In the ensuing years, Dorsey's hearing in his right ear worsened, and in 2016, Dr. Cushing,

2

an audiologist, diagnosed him as completely deaf in his left ear with profound hearing loss in his right ear. Dr. Cushing recommended the use of a hearing aid in his right ear. According to Dorsey, when he was incarcerated at NBCI, he requested access to the teletypewriter ("TTY") and video phone systems, which he asserts he needs to communicate fully with his family, but he has been continuously denied. When NBCI staff asked medical staff about Dorsey's hearing, Nurse William Beeman reported that Dorsey did not need TTY or the video phone system. Beeman based his determination on a conversation with a representative for the vendor that operates the inmate telephone system, who apparently stated that Dorsey uses the regular telephone system without issue. Dorsey alleges that the medical staff at NBCI has "made it clear that the custody staff of the DPSCS is responsible" for providing TTY or a video phone system to hearing impaired inmates. Compl. at 3, ECF No. 1. However, he further alleges that DPSCS staff "has constantly stated that medical must write an order" before he can receive such accommodations. *Id.* at 4.

After Dorsey was transferred to WCI on September 21, 2020, he repeated his request for hearing impaired services but was told that Nurse Brenda Reese had informed correctional staff that he is "not hearing impaired." *Id.* at 4. However, Dorsey alleges that on March 5, 2021, he spoke to a different WCI nurse, who stated that she found two audiologist reports, one of which stated that Dorsey is hearing impaired, and another which stated that he is not.

In reporting that Dorsey was not authorized for TTY, Reese cited a January 31, 2020 audiology report by Dr. Cushing, which concluded that Dorsey did not need TTY. In that report, Dr. Cushing stated that he performed a hearing evaluation, otoscopy, and speech audiometry and determined Dorsey's speech reception threshold, otoacoustic emissions, and puretone average. Although the results of these tests were handwritten into the report, at the bottom of the page, it appears that a strip of paper with typed text was affixed over the space for the doctor's

3

"Impressions."  Med. Records at 18, ECF No. 22-3.  Printed on the piece of paper was the following text:

> Estimated mild hearing loss bilaterally.  He has a hearing aid for the left ear asked about TTY but he's not a candidate for TTY.  Patient is not deaf in the left ear.  Pt malingered throughout test.  Example, when I switched from LE to RE ear and presented a tone at 1000 Hz at 25 dB, he said I don't hear anything in the LE.  If he didn't actually hear anything, he wouldn't have known that I was trying to test that ear.

*Id.*  The initials "RC" are handwritten beside the strip of paper, followed by a handwritten recommendation to "[f]ollow up for hearing aid cleanings as needed."  *Id.*  In light of these apparent alterations to the report, Dorsey asserts that Dr. Cushing was "coerced to change his diagnosis" to state that Dorsey does not qualify for TTY.  Compl. at 4.

Dr. Getachew, the Regional Medical Director for NBCI and WCI,  has denied that he altered or falsified Dorsey's medical records, specifically, Dr. Cushing's audiology report.  The Medical Defendants, however, do not explain why the audiology report looks like it has been altered, nor do they explain the significance of the handwritten, numerical results of the tests performed by Dr. Cushing.

According to Dr. Getachew, medical records show that medical staff have had no difficulty communicating with Dorsey in conversations at normal volumes during routine medical appointments and sick call visits.  For example, in reporting on a chronic care visit via telemedicine on October 19, 2019, Nurse Sue Brant stated that Dorsey did not appear to have difficulty understanding her and was able to verbalize his concerns without difficulty.  During a visit on March 31, 2021 relating to audiology, Dr. Patrick O'Neil noted that Dorsey had no difficulty participating in conversation at normal volumes even while the doctor wore a face mask and at times had his back to Dorsey.  Likewise, on April 6, 2021, during a visit with Nurse Amy Booth, although Dorsey stated that his hearing aid battery was dead, Booth perceived that Dorsey was

4

able to hear and understand what she said even though she was wearing a face mask, was facing away from him, and was speaking in a low tone. However, Dr. Getachew has acknowledged that during a medical appointment on February 8, 2020, Dorsey told him that though his hearing aid worked well for normal conversations, he still had difficulty with telephone conversations.

Under a DPSCS Executive Directive on the Inmate Telephone System, Maryland state prisons are required to "provide access to a Telecommunications Device for the Deaf (TDD) for an inmate determined by the medical contractor to have a hearing or speech disability and unable to use the [standard phones] as a result of that disability." DPSCS Executive Directive No. OPS.200.0002.05.B(10) (Aug. 31, 2015). Pursuant to the DPSCS Executive Directive on Inmates with a Hearing Disability, inmates are not considered deaf for purposes of access to accommodations if their hearing is corrected by use of a hearing device so that they are able to understand the spoken word, communicate orally, and use a standard telephone. DPSCS Executive Directive No. OPS.200.0004.04.B(4) and (7) (Apr. 27, 2016).

In 2015, DPSCS entered into a settlement agreement with five deaf plaintiffs in *Jarboe v. Department of Public Safety and Correctional Services*, No. ELH-12-572 (D. Md. 2015) ("the *Jarboe* Settlement"). The *Jarboe* Settlement generally required the DPSCS to provide auxiliary aids and services to deaf inmates, including TTY. As noted by the Correctional Defendants, the *Jarboe* Settlement was a private agreement, not a consent decree, and it expired three years after its effective date of May 13, 2015.

## DISCUSSION

In their Motion, the Medical Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that: (1) Title II of the ADA does not apply to private contractors or to claims of the denial of medical

5

treatment; (2) Dorsey fails to state a claim against Corizon because he has failed to allege or provide evidence to show that Corizon had a custom or policy that caused a denial of his federal rights; (3) the Medical Defendants were not deliberately indifferent to Dorsey's needs; and (4) Dorsey is not entitled to injunctive relief. In support of their Motion, the Correctional Defendants assert that: (1) they are immune from suit for claims against them in their official capacities under the Eleventh Amendment; (2) DPSCS is not subject to suit under § 1983; (3) the terms of the *Jarboe* Settlement do not apply to Dorsey; (4) Dorsey failed to exhaust administrative remedies; (6) Dorsey failed to state a claim under § 1983, the ADA, or the Rehabilitation Act; (7) the Correctional Defendants are entitled to qualified immunity; and (8) Dorsey is not entitled to injunctive relief.

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached several exhibits to their Motions. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Dorsey has not asserted that he needs discovery in order to address their Motions. The Court will thus construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). In assessing the Motions, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     The *Jarboe* Settlement

To the extent that Dorsey seeks enforcement of the terms of the *Jarboe* Settlement, he cannot obtain such relief because he was not a party to that suit. *See Jarboe v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-12-0572, 2017 WL 5640690, at *3 (D. Md. Sept. 27, 2017) (finding that a plaintiff could not seek relief under the *Jarboe* Settlement because he was not a party to it). Moreover, the *Jarboe* Settlement expired by its own terms in 2018. Accordingly, any claims to enforce the *Jarboe* Settlement will be dismissed.

## III.    Exhaustion of Administrative Remedies

The Correctional Defendants assert that Dorsey's claims should be dismissed because he has failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

8

42 U.S.C. § 1997e(a).  Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones").   "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable:  when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In Maryland prisons, for the type of grievance asserted by Dorsey, the Administrative Remedy Procedure is the administrative process that must be exhausted.  Md. Code Regs. § 12.02.28.02(B)(1), (D) (2022).   First, a prisoner must file an ARP complaint with the warden within 30 days of the incident at issue.   *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline).  Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  *Id.* § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the Inmate

Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Although they acknowledge that Dorsey filed ARPs with the Wardens of NBCI and WCI, appealed the decisions to the Commissioner of Correction, and then appealed to the IGO, the Correctional Defendants nevertheless argue that Dorsey failed to exhaust administrative remedies because he did not provide certain additional information requested by the IGO. However, the record establishes that he filed ARPs on this issue and appealed them through all required levels of the ARP process. Particularly as to NBCI, the Correctional Defendants unreasonably seek dismissal based on a failure to exhaust administrative remedies based on Dorsey's failure to produce a document—a current medical order relating to TTY—which did not even exist. Under these circumstances, the Court will deny the Correctional Defendants' Motion on the issue of exhaustion of administrative remedies.

## IV.   ADA and the Rehabilitation Act

Dorsey alleges that the failure to provide him access to TTY violated the ADA and the Rehabilitation Act. These acts generally are construed to impose the same requirements due to the similarity of their language. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

To establish a violation of Title II of the ADA or the Rehabilitation Act, plaintiffs must show that: (1) they have a disability; (2) they were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which they were otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016). "Discrimination" barred by Title II includes "a failure to make reasonable modifications" that are "necessary" to provide a disabled individual with "full and equal enjoyment" of the facility's services. *Id.* at 461. Title II of the ADA applies to state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (stating that "[s]tate prisons fall squarely within the statutory definition of 'public entity . . .'").

Pursuant to regulations promulgated pursuant to the ADA, a public entity must "take appropriate steps to ensure that communications" with disabled persons "are as effective as communications with others." 28 C.F.R. § 35.160(a) (2022). Furthermore, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities. . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. 28 C.F.R. § 35.160(b)(1). Such auxiliary aids can include TTY and videophones. 28 C.F.R. § 35.104(1). Thus, if DPSCS failed to provide Dorsey with TTY if he needed it in order to effectively use the prison phone system, there could be an ADA violation.

Here, it is undisputed that Dorsey has a hearing impairment that requires the use of a hearing aid, but the parties disagree on whether, with the use of his hearing aid, Dorsey can adequately communicate with family members over the telephone and whether he qualifies for

11

access to the TTY system. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488 (1999) ("The use of a corrective device does not, by itself, relieve one's disability."). Defendants assert that the failure to provide Dorsey access to TTY is based on the January 2020 audiology report of Dr. Cushing, which specifically states that Dorsey has "mild hearing loss bilaterally" and "is not deaf in the left ear," that he "malingered throughout [the] test," and that "he's not a candidate for TTY." Med. Records at 18. If these statements truly reflect Dr. Cushing's findings, Dorsey may not be able to establish his claims under the ADA and the Rehabilitation Act.

Dorsey, however, has alleged that this audiology report was fraudulently altered. A review of the document reveals legitimate questions about its authenticity because it appears that the typed conclusions described above were pasted onto the otherwise handwritten report. Moreover, the typed findings appear inconsistent with the handwritten statement at the top of the report that "hearing test from 2016 indicated no responses to tones in left ear." *Id.* Notably, Dorsey has asserted in the Complaint that Dr. Cushing diagnosed him as completely deaf in his left ear in 2016, and evidence of that diagnosis was provided and accepted in a prior case filed in this Court. *See Dorsey v. Wexford Health Sources, Inc.*, No. GLR-18-3304, 2019 WL 3892307, at *1 (D. Md. Aug. 19, 2019); Fed. R. Evid. 201(b)(2).

Instead of explaining the circumstances of the creation of the report and the discrepancy with the 2016 results or stating the meaning of the numerical results of the hearing tests that are handwritten into the report, the Medical Defendants summarily assert that Dorsey lacks the qualifications to challenge the report and that his claims of alteration constitute "at most, wild conjecture." Med. Defs.' Reply at 5-6, ECF No. 33. Notably, the Medical Defendants provide no declaration from Dr. Cushing attesting to the authenticity of his report. They also have provided no medical records from before 2018 that would confirm or refute Dorsey's claims about the earlier

diagnosis. At this point, given the incomplete record and the legitimate questions about the authenticity and meaning of the audiology report, the Court finds a genuine issue of material fact on whether Dorsey's hearing problems constitute a disability and whether he requires TTY as an accommodation under the ADA and the Rehabilitation Act.

Because the ADA and the Rehabilitation Act apply solely to public entities, Dorsey's claims under these statutes can proceed only against DPSCS. *See* 42 U.S.C. § 12131(1) ("[t]he term 'public entity' means ... any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Baird*, 192 F.3d at 471 (upholding the dismissal of ADA claims against individuals because Title II recognizes a cause of action only against public entities, not private individuals); *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (finding that a private hospital was not subject to ADA liability under Title II even if it performed services pursuant to a contract with the city); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (joining the Fifth, Eighth, and Eleventh Circuits in holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act").

Finally, the Correctional Defendants argue that claims against DPSCS are barred by the Eleventh Amendment to the United States Constitution and the doctrine of state sovereign immunity. Indeed, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). As relevant here, the Supreme Court has held that Title II of the ADA abrogates state sovereign immunity as to a private cause of action for damages against a state for conduct that actually violates the Fourteenth

13

Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006). Regardless of whether Dorsey's claim could be classified as asserting an ADA violation that also constitutes a violation of the Fourteenth Amendment, because Dorsey seeks injunctive relief in addition to monetary damages in this case, the Eleventh Amendment does not mandate dismissal of the ADA claim.

Thus, the Correctional Defendants' Motion will be denied as to Dorsey's ADA and Rehabilitation Act claims against DPSCS but granted as to the remaining Correctional Defendants in their individual capacities. The Medical Defendants' Motion will be granted as to Dorsey's claims under the ADA and Rehabilitation Act against both Corizon, a private contractor, and the other Medical Defendants.

## V.  Eighth Amendment

Dorsey also asserts claims of deliberate indifference to his medical needs under the Eighth Amendment based on the failure to authorize his use of TTY. The Court will address the claims against Corizon, the other Medical Defendants ("the Individual Medical Defendants"), and the Correctional Defendants separately.

### A.  Corizon

Under 42 U.S.C. § 1983, individuals may sue in federal court "[e]very person" who, under color of state law, deprives them of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Private companies that employ individuals acting under color of state law are considered "persons" for the purposes of § 1983 claims, but they cannot be held liable for violating a plaintiff's rights solely because they employ an individual who committed an unlawful act. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, they can be sued under § 1983 only if the violation results from the company's custom or

policy. *Id.* *Cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that there is no vicarious liability against local government entities for § 1983 claims).

Thus, while Corizon is responsible for the delivery of medical care in a prison setting, absent a particular custom or policy that led to the deprivation of Dorsey's constitutional rights, Corizon cannot be held liable for his claims under § 1983. *See Austin*, 195 F.3d at 728. Here, Dorsey has alleged no specific custom or policy of Corizon's that resulted in the deprivation of any rights. Accordingly, the claim against Corizon will be dismissed.

## B.     Individual Medical Defendants

Dorsey asserts that Dr. Getachew, Reese, and Beeman violated the Eighth Amendment by acting with deliberate indifference to his medical needs by failing to authorize his use of TTY. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk

to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

As discussed above in relation to the ADA claims, there is presently a genuine issue of material fact on the authenticity of the January 2020 audiology report and, by extension, whether Dorsey has a hearing impairment that requires access to the TTY system. If the audiology report truly reflected a medical opinion by Dr. Cushing that Dorsey does not have sufficient hearing loss to be eligible for TTY, Dorsey's Eighth Amendment claim against the Medical Defendants would likely fail because, at most, Dorsey would have identified a disagreement with medical providers on the appropriate treatment, or even a negligent diagnosis, which does not establish deliberate indifference. *See Scinto*, 841 F.3d at 225. *Cf. Bridgeford v. Namiely*, No. PJM-13-495, 2014 WL 198406, at *6, 9, 10 (D. Md. Jan. 14, 2014) (finding that TTY was not necessary where an

16

audiologist attested that the inmate did not require TTY if a hearing aid was provided). At this point, however, given the incomplete record and the legitimate questions about the authenticity and meaning of the audiology report, the Court finds a genuine issue of material fact on whether Dorsey had an objectively serious medical need. Where the allegation of an improper alteration cannot be rejected at this time, the Court necessarily cannot conclude that any of the individuals involved in this case lacked subjective awareness of his unmet medical needs. Notably, Beeman did not even rely on the audiology report and simply denied TTY based on statements by the contractor operating the prison phone system. The Court will therefore deny the Medical Defendants' Motion with regard to Dorsey's Eighth Amendment claims against Dr. Getachew, Reese, and Beeman.

### C.   Correctional Defendants

Dorsey also asserts an Eighth Amendment claim against the Correctional Defendants based on the denial of access to the TTY system. DPSCS policy, however, is that prisons provide access to a telecommunications device only to inmates who have been determined by the medical contractor (1) to have a hearing or speech disability and (2) to be unable to use the standard phones as a result. DPSCS Executive Directive No. OPS.200.0002.05.B(10). Here, it is undisputed that the Medical Defendants, including Dr. Getachew, Reese, and Beeman, never approved Dorsey for access to TTY. When correctional officers rely on medical providers' assessment of medical needs, courts generally will not find that they have acted with deliberate indifference. *See Iko*, 535 F.3d at 242 (recognizing the principle that a prison official can generally avoid liability based on deliberate indifference when they have relied on the medical staff's examinations and diagnoses); *cf. Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (noting that prison officials may incur liability when they contravene or interfere with treatment ordered by medical personnel). Thus, where the

Correctional Defendants relied on the medical staff's assessments that Dorsey did not need access to TTY, the Eighth Amendment claims against them for deliberate indifference cannot succeed and will be dismissed.

## VI.   Dr. Cushing

Service has not been accepted on behalf of Dr. Cushing.  In light of Dorsey's status as an incarcerated party, the Court will direct the United States Marshal to effect service.  To facilitate that process, counsel for the Medical Defendants will be ordered to provide, under seal, the last known home or business address of Dr. Cushing, solely for purposes of service of process.

## VII.   Motion for Appointment of Counsel

To date, Dorsey has been able to articulate his claims and to advocate on his own behalf. Although Dorsey has stated that he has made unsuccessful efforts to find counsel, he has not yet done so with the benefit of a favorable ruling on dispositive motions.  In light of the present posture of the case, and with the need for some time to arrange for service on Dr. Cushing, Dorsey is directed to again seek to find counsel willing to take his case now that he has advanced past these initial motions and to report back on such efforts in 60 days.  Accordingly, the Motion for Appointment of Counsel will be denied without prejudice.

**CONCLUSION**

For the foregoing reasons, the Correctional Defendants' Motion with be GRANTED IN PART and DENIED IN PART, in that it will be denied as to Dorsey's claims under the ADA and the Rehabilitation Act against DPSCS but otherwise granted.  The Medical Defendants' Motion will be denied as to Dorsey's Eighth Amendment claims against Dr. Getachew, Reese, and Beeman but otherwise granted.  The Motion for Appointment of Counsel will be DENIED WITHOUT PREJUDICE.  A separate Order shall issue.

Date:   September 26, 2022

THEODORE D. CHUANG
United States District Judge

19