**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TERRY DORSEY,

    Plaintiff,

    v.

WILLIAM BEEMAN,
BRENDA REESE,
MARYLAND DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL
SERVICES,
DR. GETACHEW and
DR. ROSS CUSHING,

    Defendants.

Civil Action No.: BAH-21-0721

**MEMORANDUM OPINION**

Plaintiff Terry Dorsey, an individual who is currently incarcerated at Eastern Correctional Institution ("ECI"), filed this action asserting that he has a hearing impairment and defendants are denying him access to teletypewriter ("TTY") services.[1]  ECF 1.  At this juncture, Dorsey has claims remaining against Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"); William Beeman, Dr. Getachew, and Brenda Reese (collectively, the "Medical Defendants"); and Dr. Ross Cushing.  ECF 37 (memorandum opinion addressing prior motions); ECF 38 (order addressing prior motions).  Dorsey seeks declaratory judgment, injunctive relief, and monetary damages. ECF 1.

The following motions are pending:  Dorsey's Motion for a Preliminary Injunction (ECF 87); DPSCS's Motion for Summary Judgment (ECF 89); DPSCS's Motion to Reconsider and

---

[1] A teletypewriter is a printing device resembling a typewriter that is used to send and receive signals over telephone lines. *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/teletypewriter. Last accessed June 11, 2024.

Revoke the Court's Order Granting Plaintiff In Forma Pauperis Status (ECF 93); Dr. Cushing's Motion to Dismiss, or, in the alternative, for Summary Judgment (ECF 97); and the Medical Defendants' Motion for Summary Judgment (ECF 109).

The Court has reviewed the materials submitted on each motion and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, DPSCS's motion for reconsideration of the Court's order granting Dorsey in forma pauperis status is DENIED; the motions for summary judgment filed by DPSCS and the Medical Defendants are GRANTED; Dr. Cushing's motion, construed as a motion for summary judgment, is GRANTED; and Dorsey's motion for injunctive relief is DENIED.

## I.  BACKGROUND

### A.  Procedural Background

On September 26, 2022, the Court issued a Memorandum Opinion and Order granting in part and denying in part motions to dismiss, or in the alternative, for summary judgment filed by DPSCS and the Medical Defendants on Dorsey's claims that he was denied TTY services. ECFs 37, 38. The Court allowed the following claims to go forward: 1) against DPSCS for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. §§ 701–796; and 2) against the Medical Defendants for violations of the Eighth Amendment to the United States Constitution for deliberate indifference to medical needs. *Id.* In addition, service of the Complaint was directed on Defendant Dr. Cushing. *Id.*

The Court allowed these claims to go forward because it found a remaining question of fact on the authenticity of an audiology report issued by Defendant Dr. Cushing, an audiologist. ECF 37. In his report, Dr. Cushing opined that Dorsey does not have sufficient hearing loss to make him eligible to use a TTY. *Id.* at 3. Dorsey asserted that Dr. Cushing was "coerced to change

his diagnosis" to state that Dorsey does not qualify for TTY. *Id.* at 4 (citing ECF 1, at 4). The

Court set out the controversy on the audiology report as follows:

> In reporting that Dorsey was not authorized for TTY, Defendant Reese cited a January 31, 2020 audiology report by Dr. Cushing, which concluded that Dorsey did not need TTY. In that report, Dr. Cushing stated that he performed a hearing evaluation, otoscopy, and speech audiometry and determined Dorsey's speech reception threshold, otoacoustic emissions, and puretone average. Although the results of these tests were handwritten into the report, at the bottom of the page, it appears that a strip of paper with typed text was affixed over the space for the doctor's "Impressions." Med. Records at 18, ECF No. 22-3. Printed on the piece of paper was the following text:
>
>> Estimated mild hearing loss bilaterally. He has a hearing aid for the left ear asked about TTY but he's not a candidate for TTY. Patient is not deaf in the left ear. Pt malingered throughout test. Example, when I switched from LE to RE ear and presented a tone at 1000 Hz at 25 dB, he said I don't hear anything in the LE. If he didn't actually hear anything, he wouldn't have known that I was trying to test that ear.
>
> *Id.* The initials "RC" are handwritten beside the strip of paper, followed by a handwritten recommendation to "[f]ollow up for hearing aid cleanings as needed." *Id.* In light of these apparent alterations to the report, Dorsey asserts that Dr. Cushing was "coerced to change his diagnosis" to state that Dorsey does not qualify for TTY. Compl. at 4.
>
> Dr. Getachew, the Regional Medical Director for NBCI and WCI, has denied that he altered or falsified Dorsey's medical records, specifically, Dr. Cushing's audiology report. The Medical Defendants, however, do not explain why the audiology report looks like it has been altered, nor do they explain the significance of the handwritten numerical results of the tests performed by Dr. Cushing.

ECF 37, at 3–4.

Defendants' motions that relied on the authenticity of the report were denied. In relation

to Dorsey's ADA and Rehabilitation Act claims against DPSCS, the Court observed:

> Here, it is undisputed that Dorsey has a hearing impairment that requires the use of a hearing aid, but the parties disagree on whether, with the use of his hearing aid, Dorsey can adequately communicate with family members over the telephone and whether he qualifies for access to the TTY system. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 488 (1999) ("The use of a corrective device does not, by itself, relieve one's disability."). Defendants assert that the failure to provide Dorsey access to TTY is based on the January 2020 audiology report of Dr. Cushing, which

> specifically states that Dorsey has "mild hearing loss bilaterally" and "is not deaf
> in the left ear," that he "malingered throughout [the] test," and that "he's not a
> candidate for TTY." Med. Records at 18. If these statements truly reflect Dr.
> Cushing's findings, Dorsey may not be able to establish his claims under the ADA
> and the Rehabilitation Act.

ECF 37, at 11–12.  The Court also found that there was a genuine issue of material fact on whether

Dorsey's hearing problems constitute a disability due to the incomplete record and questions about

the authenticity and meaning of the audiology report.  *Id.* at 13.

Similarly, the Court denied the motion by the Medical Defendants in relation to Eighth

Amendment claims stating:

> As discussed above in relation to the ADA claims, there is presently a genuine issue
> of material fact on the authenticity of the January 2020 audiology report and, by
> extension, whether Dorsey has a hearing impairment that requires access to the
> TTY system. If the audiology report truly reflected a medical opinion by Dr.
> Cushing that Dorsey does not have sufficient hearing loss to be eligible for TTY,
> Dorsey's Eighth Amendment claim against the Medical Defendants would likely
> fail because, at most, Dorsey would have identified a disagreement with medical
> providers on the appropriate treatment, or even a negligent diagnosis, which does
> not establish deliberate indifference. *See Scinto v. Stansberry*, 841 F.3d 219, 225
> (4th Cir. 2016). *Cf. Bridgeford v. Namiely*, No. PJM-13-495, 2014 WL198406, at
> *6, 9, 10 (D. Md. Jan. 14, 2014) (finding that TTY was not necessary where an
> audiologist attested that the inmate did not require TTY if a hearing aid was
> provided).

ECF 37, at 16–17 (*Scinto* citation added in full).

By Order issued on January 17, 2023, the Court denied, for the second time, motions by

DPSCS and the Medical Defendants to reconsider the Court's ruling and ordered the Defendants

to provide limited discovery to Dorsey to include medical records of medical visits or examinations

relating to Dorsey's hearing; records pertaining to communications between prison medical

providers and correctional staff about Dorsey's hearing issues and his possible need for TTY; and

all recordings of prison phone calls that defendants intend to rely on in establishing that Dorsey

allegedly does not need TTY services.  ECF 65.

On August 25, 2023, the Court received Dorsey's second motion for a preliminary injunction stating that he "fears for his life and safety" since his transfer to ECI.[2]   ECF 87, at 2. Dorsey believes he was transferred to ECI in retaliation for filing this litigation.  *Id.*  He also complains that he receives only one battery per month for his hearing aid.  *Id.*  Dorsey does not ask for any particular relief in his motion.  DPSCS has filed a response in opposition to the motion, ECF 101, and Dorsey has filed a reply requesting a transfer to Patuxent Institution.  *Id.* at 8.

On September 8, 2023, DPSCS filed a renewed motion seeking summary judgment on the ADA and Rehabilitation Act claims that the Court previously denied.  ECF 89.  Dorsey has not responded to this motion.[3]

Defendant Dr. Cushing has been served, and on October 6, 2023, he filed a Motion to Dismiss, or, in the alternative, for Summary Judgment addressing claims brought against him under the ADA, Rehabilitation Act, and Eighth Amendment.  ECFs 51, 97.  Although titled in this manner, the accompanying Memorandum of Law states that the Memorandum "will concentrate on the Motion for Summary Judgment Arguments," ECF 97-3, at 1, and consistent with this statement, relies primarily on the affidavit submitted by Dr. Cushing, and does not present a legal argument in support of a motion to dismiss, *id.* at 4.   Further, Dr. Cushing incorporates by

---

[2] Dorsey's first motion for a preliminary injunction was denied by Memorandum Opinion and Order issued on November 10, 2022.  ECF 56.  Dorsey was seeking a transfer to another prison alleging that he had been retaliated against by correctional staff at Western Correctional Institution ("WCI"), where he was then housed, and that he was at risk of harm.  *Id.*

[3] Dorsey did not file a response to DPSCS's motion seeking summary judgment.  Nonetheless, DPSCS filed a Reply requesting that, in the event that the Court construes Dorsey's response filed in opposition to the Medical Defendants' motion for summary judgment (ECF 117) to also be a response to their motion for summary judgment (ECF 89), that their reply be considered.  ECF 118, at 1 n.1.  The Court construes Dorsey's response, received for filing on April 29, 2024 - nearly eight months after DPSCS filed their motion for summary judgment (ECF 89) - to pertain solely to the motion for summary judgment filed by the Medical Defendants (ECF 109). The reply filed by DPSCS will thus be stricken from the record.

reference the pending motion for summary judgment and memorandum of law filed by DPSCS. *Id.*; ECFs 89, 89-1.  Hence, Dr. Cushing's motion will be construed solely as a motion for summary judgment, and will be considered as such, along with the motions for summary judgment filed by DPSCS and the Medical Defendants.  ECFs 89, 109.  Dorsey has responded to this motion.  ECF 105.

On February 9, 2024, the Medical Defendants filed a dispositive motion on the Eighth Amendment claim previously denied by the Court. ECFs 109, 120.  Dorsey has responded to this motion and the Medical Defendants have replied.  ECFs 117, 119.

B.     **Factual Allegations**

The Court incorporates by reference the background set forth in its September 26, 2022 Memorandum Opinion.  ECF 37, at 2–5.  Additional factual allegations, as presented in the instant motions, follow below.

Defendant DPSCS provided the affidavit of Dr. Cushing dated  August 31, 2023, in support of its motion for summary judgment, ECF 89-7, and the identical affidavit was submitted by Dr. Cushing with his motion for summary judgment.  ECF 97-4.[4]  The Medical Defendants provided an affidavit of Dr. Cushing, dated November 22, 2022, with their motion for summary judgment whose content varies slightly from the August 31, 2023 affidavit.[5]  ECF 109-3.  The affidavits and the variations are discussed below.

---

[4] Citations to the Cushing affidavit dated August 31, 2023, will reference the affidavit filed with Dr. Cushing's motion at ECF 97-4.

[5] Where the November 22, 2022, affidavit contains the same information as the August 31, 2023, affidavit, it will not be separately cited.

Dr. Cushing states that he is a licensed audiologist and at the times relevant to the present matter was under contract with Corizon Health, Inc. to provide audiology services and hearing aid products to inmates confined at DPSCS facilities. ECF 97-4 at ¶ 1–2.

Dr. Cushing addresses the peculiarities of his January 31, 2020, audiology report that caused a factual dispute in prior filings. When he was conducting the January 31, 2020 hearing examination, he received responses from Dorsey that were inconsistent with results from hearing tests he had conducted on Dorsey on November 2016 and January 2017, indicating that Dorsey can now hear softer tones. *Id.* at ¶ 12. Dr. Cushing notes that the test is entirely subjective and relies on the patient being truthful. *Id.* at ¶ 13. Dr. Cushing made notes, and then corrected the notes as the test progressed. *Id.*

Dr. Cushing reports that Dorsey was able to accurately repeat 100% of the words presented to him in his right ear at 65 decibels, which is average speaking volume, and 84% of the words presented in his left ear at 85 decibels which is loud speaking volume. *Id.* at ¶ 14. Dr. Cushing concludes that Dorsey is "definitely not deaf" in his left ear. *Id.* He further states that the test was unreliable and Dorsey had "more hearing ability than was previously reported." *Id.* at ¶ 15.

After the testing was complete, Dr. Cushing returned to his office, and because the report "was a mess because of multiple changes due to what I believed was an insincere effort by Mr. Dorsey, I decided it would be easier to understand if I typed out my findings and pasted them over the messy portion." *Id.* at ¶ 16. Dr. Cushing marked the results as "ESTIMATED RESULTS" and indicated that the reliability was "Poor" so that the reader would understand why the results were inconsistent. *Id.* Dr. Cushing acknowledges that pasting a typed portion of the report over the corrections caused confusion. *Id.* at ¶ 17.

It is Dr. Cushing's opinion "to a reasonable degree of audiology certainty" that Dorsey "does, in fact, have a hearing loss but not to the level that the initial test in 2016 indicated." *Id.* at ¶ 18. Further, Dorsey can hear from the right ear as he "understood 100% of words spoken to him in a quite environment at 65dB (normal speaking voice)." *Id*. TTY is "not necessary or appropriate" because Dorsey should be able to hear without a problem over the telephone, which he demonstrated by responding accurately to words spoken to him through an earphone test that was administered. *Id.*

In the August 31, 2023 affidavit, Dr. Cushing adds that "[a]t no time did I ever recommend, order or prescribe" that Dorsey be given access to TTY services. *Id.* at ¶ 3. Further, based on examinations of Dorsey from 2016 to the present, Dorsey's condition is corrected by use of the hearing aid and he does not require TTY/TDD access. *Id.* Dr. Cushing also adds that at no point was he asked by either DPSCS or medical staff to "reach any particular conclusions, diagnosis, or recommendations for accommodation for Mr. Dorsey with respect to his hearing abilities" or to change his opinions concerning Mr. Dorsey's hearing ability or conditions. *Id.* at ¶ 4. In the November 22, 2022 affidavit, Dr. Cushing adds that if results need to be further substantiated, there is a test that is a "more objective estimation" of Dorsey's hearing thresholds that was not administered that is called a "threshold auditory brainstem response search." ECF 109-3 at ¶ 15. This test "does not require subjective input from the patient." *Id.*

Motions filed by both DPSCS and the Medical Defendants also include the affidavit of Defendant Dr. Getachew. ECF 89-8; ECF 120-1.[6] Dr. Getachew is a physician licensed in

---

[6] The Medical Defendants appear to have inadvertently submitted only page one of Dr. Getachew's affidavit with their initial motion, ECF 109-4, but this is corrected in a revised filing at ECF 120-1. Citations to the Getachew affidavit will reference the affidavit filed with DPSCS's motion at ECF 89-8.

Maryland and currently employed by YesCare as the regional medical director for North Branch Correctional Institution ("NBCI") and WCI.  ECF 89-8 at ¶ 1.  Dr. Getachew was previously employed by Corizon Health and Wexford Health when they held the contracts for medical care with DPSCS.  *Id.*  Dr. Getachew states that at "no time" did he "recommend, order, or prescribe" that Dorsey be given access to TTY/TTD services.  *Id.* at ¶ 5.  Further, at "no time" did he alter or falsify Dorsey's medical record, nor was he ever asked by any other medical contractor or DPSCS staff to do so.  *Id.* at ¶ 6.  Dr. Getachew also opines that Dr. Cushing's finding that Dorsey has only mild bilateral hearing loss is consistent with Dorsey's clinical presentation. *Id.* at ¶ 7.  In particular, Dorsey "has not exhibited difficulty hearing his providers at multiple treatments, including when they were wearing mouth-covering masks and had their backs turned to him."  *Id.* Medical records are provided in support of Dr. Getachew's statement pertaining to observations at treatment meetings.  *See* ECF 90.

DPSCS submitted the declaration of Lorraine Marketti, who is employed by DPSCS in the Intelligence and Investigative Division-Analytical and Technical Service Unit as the Subpoena Administrator.  ECF 89-10 at ¶ 1.  Ms. Marketti certifies that she submitted to the Court the recordings of 80 telephone calls made by Dorsey from regular, non-video, non TTY/TDD telephones and that the recordings were made in the ordinary course of business.  *Id.; see also* ECF 45-3.  DPSCS also submitted a declaration from Jason D. Clise, a Correctional Case Management Specialist and Assistant Litigation Coordinator employed by DPSCS.  ECF 89-15.  Clise attests that on October 20, 2022, Dorsey was provided with an opportunity to listen to all of the telephone recordings, and that he observed Dorsey listen to portions of many of the calls, and to all of one of the calls from August 13, 2022.  *Id.* at ¶ 2.  Clise observed that Dorsey sat to the side of the laptop computer that was replaying the audio recordings, "appeared to have no trouble hearing the records

and never asked me to increase the volume and never said he could not hear or understand the conversations replayed." *Id.* at ¶ 3. Further, Clise spoke to Dorsey at a "volume typical for any indoor conversation between two people in a room, and he demonstrated no problem hearing, understanding, or responding appropriately to what I said." *Id.* The telephone recordings filed with the Court demonstrate that Dorsey was able to hear and participate in multiple telephone conversations without difficulty. ECF 45-3.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court cannot weigh evidence, *Robinson*

*v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659–60 (4th Cir. 2018)).  For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).

## III.    DISCUSSION

### A.    DPSCS's Motion for Summary Judgment - ADA and Rehabilitation Act

DPSCS seeks summary judgment on Dorsey's claims that DPSCS violated the ADA and Rehabilitation Act by failing to provide Dorsey with TTY access.  ECF 89.  DPSCS asserts that Dorsey failed to state a claim, and because there is no genuine dispute as to any material fact, DPSCS is entitled to judgment in its favor as a matter of law.  *Id.* at 1.

Both the ADA and the Rehabilitation Act apply to DPSCS, as discussed in the Court's September 26, 2022 Memorandum Opinion. *See* ECF 37, at 10–13. As stated therein, these acts generally are construed to impose the same requirements due to the similarity of their language. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall,

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).

Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one of more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. § 12102(1)(A)–(C).  Hearing, speaking, and communicating are "major life activities" protected by the statute. 42 U.S.C. § 12102(2)(A).  For purposes of Title II, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Further, to establish a violation of Title II of the ADA or the Rehabilitation Act, plaintiffs must meet three criteria: (1) they have a disability; (2) they were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which they were otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability.  *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016); 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Regulations promulgated pursuant to the ADA require a public entity to "take appropriate steps to ensure that communications" with disabled persons "are as effective as communications with others."  28 C.F.R. § 35.160(a)(1).  Furthermore, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public

entity." 28 C.F.R. § 35.160(b)(1).  Such auxiliary aids can include TTY and videophones.  28

C.F.R. § 35.104(1).  Thus, if Dorsey needed to use a TTY to effectively use the prison telephone

system, and DPSCS failed to provide the service, there could be both an ADA and a Rehabilitation

Act violation.

DPSCS's renewed motion for summary judgment directly addresses the factual dispute

previously identified by the Court.  The affidavit of Dr. Cushing attests to the authenticity of his

audiology report and explains his method for preparing the actual report.  ECF 89-7.  He

unequivocally concludes that TTY is "not necessary or appropriate" because Dorsey should be

able to hear without a problem over the telephone, which he demonstrated by responding

accurately to words spoken to him through an earphone test that was administered.  *Id.* at 6.

Additionally, Dr. Getachew attests that he has never recommended that Dorsey receive

TTY services and Dr. Cushing's finding that Dorsey has only mild bilateral hearing loss is

consistent with Dorsey's clinical presentation.  ECF 89-8.  And finally, DPSCS provides

declarations pertaining to telephone recordings of Dorsey, their provision of those recordings to

Dorsey and the Court, and the lack of any observed hearing difficulties by Dorsey in those

recordings. *See* ECF 89-10 (Marketti Declaration), at 2; 89-15 (Clise Declaration).

Given the thorough (and essentially uncontested) explanation provided by Dr. Cushing

directly addressing the issues raised by the Court in its September 26, 2022 Memorandum Opinion,

the Court is presented with no legitimate reason to conclude that Dr. Cushing's report is

inauthentic.  Though Dorsey attempts to manufacture a material dispute over the assertions in Dr.

Cushing's report and those contained in Dr. Cushing's sworn affidavit, Dorsey's response boils

down to an unsupported request for the Court to reject Dr. Cushing's explanations. *See, e.g.*, ECF

117, at 4 (claiming that Dr. Cushing's assertions are "clearly [] questionable by any standards

consistent with intellect"); at 6 ("Though the plaintiff has attempted to avoid blatantly questioning the integrity of Dr. [] Cushing, it is nevertheless in question due to the obvious intellectual logic.") More is required to defeat summary judgment. *See Doyle v. Sentry Ins.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995) ("Once the movant has met [his] burden, and a properly supported motion is before the Court, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere belief or conjecture, or the allegations and denials contained in his pleadings."). The undisputed facts before the Court reflect that Dorsey is able to use the standard telephone system and does not require an accommodation to do so. Use of a TTY is not necessary or appropriate for Dorsey. Thus, Dorsey's claim may not proceed under either the ADA or Rehabilitation Act against DPSCS because he was not qualified to receive the benefit of TTY services and was not denied the benefit of this service on the basis of his disability. *See Nat'l Fed'n of the Blind*, 813 F.3d at 503. The Court declines to determine if Dorsey has a hearing impairment that meets the definition of disability as it is not necessary to do so to resolve the pending motion.[7]

DPSCS's motion for summary judgment will be granted and judgment will be entered in favor of DPSCS on both Dorsey's ADA and Rehabilitation Act claims.

---

[7] The Court previously found a genuine issue of material fact on whether Dorsey's hearing problems constitute a disability due to the incomplete record and questions about the authenticity and meaning of the audiology report. ECF 37, at 13. DPSCS asserts that Dorsey is not a person with a disability under the ADA or Rehabilitation Act because either his hearing aid corrected his deficit, or he did not need the hearing aid at all, and that a person whose disabling condition is successfully treated or remediated is not disabled within the ADA's meaning. ECF 89-1, at 15, 18. This position is in contrast with the definition of disability in the ADA which explicitly states that whether an individual's impairment substantially limits a major life activity "shall be made without regard to the ameliorative effects of mitigating measures such as . . . hearing aids." 42 U.S.C. § 12102(4)(E)(i)(I).

**B.      Medical Defendants' Motion for Summary Judgment – Eighth Amendment**

The Medical Defendants seek dismissal of Dorsey's claims that they violated the Eighth Amendment by failing to provide TTY services.  ECFs 109, 120.  Dorsey has responded to this motion and the Medical Defendants have replied.  ECFs 117, 119.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto*, 841 F.3d at 225; *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or

one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto,* 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

The Medical Defendants' motion directly addresses the factual dispute previously identified by the Court. They have submitted the affidavit of Dr. Cushing attesting to the authenticity of his audiology report and explaining his method for preparing the actual report. ECF 109-3. As the Court has concluded in the analysis provided above, Dr. Cushing unequivocally

concludes that TTY is "not necessary or appropriate" because, as he has demonstrate an ability to respond accurately to words spoken to him through an earphone test, Dorsey should be able to hear without a problem over the telephone. *Id.* at 5. The Medical Defendants also submitted the affidavit of Dr. Getachew which, as noted above, states that he has never recommended Dorsey receive TTY services and Dr. Cushing's finding that Dorsey has only mild bilateral hearing loss is consistent with Dorsey's clinical presentation. ECF 120-1, at 3.

Dorsey's response to the motion filed by the Medical Defendants continues to challenge the credibility of Dr. Cushing's most recent assessment of his hearing deficit. ECF 117. In support of his response, Dorsey provides medical and other records noting his hearing deficit that predate Dr. Cushing's recent assessment. ECF 117-1; 117-4. The Medical Defendants' reply largely reiterates that there is no dispute of material fact and they are entitled to summary judgment. ECF 119.

As noted, the Court finds that Dr. Cushing's report is authentic and Dorsey did not need access to a TTY to adequately use the telephone system. There is no factual evidence that any of the medical providers failed to meet Dorsey's medical needs. Dorsey has baldly alleged the opposite but has not provided facts to counter the evidence presented, or, more importantly, to establish that there is a genuine dispute as to a material fact. At most, Dorsey presents a difference of opinion with that of the medical providers. Further, as the Court noted in its prior decision, even if Dorsey has identified a disagreement with medical providers on the appropriate treatment, or even a negligent diagnosis, this does not establish deliberate indifference. *See* ECF 37, at 16–17; *see also Scinto,* 841 F.3d at 225; *cf. Bridgeford v. Namely*, No. PJM-13-495, 2014 WL198406, at *6, 9, 10 (D. Md. Jan. 14, 2014) (finding that TTY was not necessary where an audiologist attested that the inmate did not require TTY if a hearing aid was provided).

Dorsey's claims may not proceed against the Medical Defendants under the Eighth Amendment, and summary judgment is granted in their favor.  The Court declines to determine if Dorsey has a serious medical condition as it is not necessary to do so to resolve the pending motion.

### C.      Dr. Cushing's  Motion for Summary Judgment – ADA, Rehabilitation Act, Eighth Amendment

**Dr.** Cushing seeks summary judgment as to Dorsey's claims brought against him under the ADA, Rehabilitation Act, and Eighth Amendment.  ECF 97.  Dr. Cushing asserts that Dorsey failed to state a claim upon which relief can be granted, and because that there is no genuine dispute as to any material fact he is entitled to judgment as a matter of law.  *Id.* at 1.  Dorsey has responded to this motion.  ECF 105.

Dr. Cushing incorporates by reference the the Motion and Memorandum of Law filed by DPSCS.  *See* ECF 97-3, at 4.  Similar to DPSCS, and without further legal analysis, he asserts that Dorsey is not disabled under the provisions of the ADA and Rehabilitation Act, and for this reason cannot be found to have violated these statutes.  *Id.* at 6.

As to Dorsey's Eighth Amendment claim, Dr. Cushing relies on his affidavit stating that although Dorsey "does indeed have hearing loss" it is his opinion that a TTY device is "not necessary nor appropriate since he should be able to hear without problem over the phone."  ECF 97-3, at 6–7; ECF 97-4, at ¶ 18.  Dr. Cushing argues, as did the Medical Defendants, that at most there is a disagreement with medical providers on appropriate treatment, or even a negligent diagnosis which would not establish deliberate indifference.  *See Scinto*, 841 F.3d at 225; *cf. Bridgeford*, 2014 WL198406, at *6, 9, 10 (D. Md. Jan. 14, 2014).

Dorsey responded to Dr. Cushing's motion by continuing to challenge the credibility of Dr. Cushing's most recent assessment of his hearing deficit.  ECF 105.  In support of his response,

18

Dorsey provides medical records noting his hearing deficit that are dated prior to Dr. Cushing's most recent assessment.  ECF 105-1, at 1–3.

As to the ADA and Rehabilitation Act claims, and as discussed above, the Court declines to determine if Dorsey meets the definition of disabled, but the record does establish that Dorsey is not in need of TTY services.  There is no genuine dispute of this fact.  For this reason, the Court finds that Dr. Cushing did not violate the ADA or the Rehabilitation Act.

As to the Eighth Amendment claim, and as discussed above, there is no genuine dispute of material fact as to Dorsey's need for TTY services. The Court has found that Dorsey was not in need of TTY services.  For this reason, the Court finds that Dr. Cushing has not violated the Eighth Amendment.

Dr. Cushing's motion for summary judgment will be granted and judgment will be entered in his favor as to the ADA, Rehabilitation Act, and Eighth Amendment claims against him.

### D.    Dorsey's Motion for a Preliminary Injunction

Dorsey filed a second motion seeking injunctive relief.  ECF 87.  He states that he "fears for his life and safety" since his transfer to ECI and that he receives only one battery per month for his hearing aid.   ECF 87, at 2.  Dorsey has not asked for any particular relief in his motion. DPSCS responded to the motion, ECF 101, and Dorsey filed a reply requesting a transfer to Patuxent Institution.  ECF 104.

A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council,*

*Inc.,* 555 U.S. 7, 20 (2008). Failure to establish one of these elements is fatal to the request for injunctive relief.

As discussed herein, Dorsey cannot demonstrate the likelihood of success on the merits as summary judgment will be entered in favor of the Defendants as to all pending claims. Because he cannot satisfy this element, his request for injunctive relief must therefore be denied.

### E. DPSCS's Motion for Reconsideration of the Grant of Dorsey's In Forma Pauperis Status

This action was opened on March 22, 2021, upon receipt of Dorsey's complaint and motion for leave to proceed in forma pauperis. ECFs 1, 2. On June 23, 2021, the motion was granted. ECF 6. Over two years later, on September 20, 2023, counsel for DPSCS filed a motion requesting that the Court reconsider and revoke Dorsey's in forma pauperis status, and dismiss the case without prejudice unless Dorsey pays the full filing and administrative fees. ECF 93. The motion asserts that Dorsey had five cases previously dismissed that qualify as strikes under the Prison Litigation Reform Act. *Id.*; *see also* 28 U.S.C. § 1915(g) (the right to file a complaint in federal court without first paying the filing fee will be greatly curtailed if a prisoner has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B)(i)(ii) and 1915A(b)(1) as frivolous, malicious, or for failure to state a claim while he is incarcerated).

The Court declines to take up this issue at this late date, and certainly not with the inaccuracies and lack of legal analysis present in DPSCS's motion. For example, DPSCS lists *Berry, et al. v. Jessamy, et al.,* Civ. No. BEL-98-3468, in error, as the case number provided does not match the caption on the docket, and Dorsey is not a plaintiff in that matter. *See* ECF 93, at 4. DPSCS also lists *Dorsey v. Bishop, Jr.,* Civ. No. GLR-14-2847, wherein the case was dismissed because Dorsey failed to timely file a supplement to the complaint, not because, as DPSCS asserts,

Dorsey failed to state a claim. ECF 93, at 4.  For the remaining cases, counsel has not provided legal analysis to support the assertion that the Court should count each listed case a strike.

The Court further notes that counsel's repetitive requests that Dorsey's instant action be deemed a strike is denied as contrary to existing law.  ECF 89-1, at 24–25; ECF 118, at 7.  *See Pitts v. South Carolina*, 65 F.4th 141, 145 (4th Cir. 2023) (holding that a district court may not, at the time it dismisses a complaint under § 1915(e), determine that the dismissal will count as a strike in the future application of § 1915(g)'s three strike rule).

## IV.    CONCLUSION

The motions for summary judgment filed by DPSCS and the Medical Defendants are GRANTED; Dr. Cushing's motion, construed as a motion for summary judgment, is GRANTED; Dorsey's motion for injunctive relief is DENIED; DPSCS's motion for reconsideration of the Court's order granting Dorsey in forma pauperis status is DENIED.

A separate Order follows.


Date:  <u>July 23, 2024</u>                                    <u>            /s/            </u>
                                                          BRENDAN A. HURSON
                                                          United States District Judge